RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 1/25/12

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| THE WEDDINGTON COMPANY, LLC | CIVIL ACTION NO.: 11-681 |
| VERSUS | JUDGE HAIK |
| OFFSHORE INLAND MARINE & OILFIELD SERVICE, INC. | MAGISTRATE JUDGE HILL |

## REASONS FOR JUDGMENT

### I. Facts

On March 24, 2011, The Weddington Company, LLC (Weddington) brought suit against Offshore Inland Marine & Oilfield Service, Inc. (Offshore) in Louisiana state court, 16th Judicial District Court, for damages arising out of an alleged breached lease agreement. This action was then removed to this Court on April 28, 2011. Weddington alleges that on January 31, 2011, Offshore improperly dissolved the lease agreement. Specifically, Weddington, as lessor, and Offshore, as lessee, entered into a lease agreement on November 18, 2009 for a certain parcel of land located in Iberia Parish; the term of the lease was for three years, terminating October 31, 2012, with a monthly rental of $15,000.00.

The lease agreement was finalized after thorough negotiations between the two parties. Once the lease was initially drafted by Weddington, the draft was then sent to Offshore, who made redline changes to the agreement. For example, the original draft of the lease contained an acceleration provision, which Offshore removed; Offshore added language to the lease requiring Weddington to perform a Phase II Environmental Site Assessment (ESA) within 30 days of the execution of the lease, and added language making failure to do so a material breach. The pertinent portions of the finalized and executed lease agreement include:

> 14.3 Entire Agreement: This Lease and the Exhibits . . . set forth all the covenants, promises, agreements, conditions and understandings between Lessor and Tenant concerning the Leased Premises and there are no covenants, promises, agreements, conditions or understandings, either oral or written, between them other than as are herein set forth. Except as herein otherwise provided, no subsequent alteration, amendment, change or addition to this Lease shall be binding upon Lessor or Tenant unless reduced to writing and signed by them.

> 15.1 Environmental Site Assessment: Lessor shall provide, at its cost, a Phase II Environmental Site Assessment for the Lease Premises within 30 days of the date this lease is executed. Failure to do so shall be considered a material breach of this

1

lease and Tenant may, at its sole discretion, avail itself of any right or remedy available to Tenant on account of Lessor's default, either in law or equity.

Article VII . . . In case either party shall be required to employ an attorney-at-law in order to assert, preserve, or otherwise enforce any right to remedy granted to it under the terms of the Lease, then and in that event, the party in default, in addition to any and all other damages or sums which might be due, shall be liable for all costs and expenses included, including reasonable attorney's fees.

Pursuant to this lease agreement, Weddington contacted a company to perform the Phase II ESA within 30 days. However, instead of performing a new Phase II ESA, Weddington delivered to Offshore a Phase II ESA from 2006, along with a soil evaluation of the property. Weddington outwardly concedes that this soil evaluation was not a Phase II ESA,[1] but alleges that Offshore orally accepted Weddington's soil evaluation with a 2006 Phase II ESA as sufficient. By letter dated January 28, 2011, Offshore notified Weddington of Weddington's material breach of the lease and of Offshore's election to terminate the lease effective January 31, 2011, as permitted by the lease agreement. At all times prior to the dissolution of the lease, Offshore timely paid its full rental value.

Based on Offshore's election to terminate the lease, Weddington brought suit for damage to the property, costs of remediation of the leased premises, unpaid rent for the remainder of the lease, attorney's fees, and injunctive relief compelling Offshore to remove certain materials from the leased premises. Offshore now brings this Motion for Partial Summary Judgment against Weddington's prayer for damages for breach of contract, including payments under the lease and for attorney's fees, alleging that it was Weddington, not Offshore, who materially breached the lease agreement by failing to conduct a Phase II ESA as required by the agreement.

## II. Offshore's Contentions

Offshore argues it has no liability for breach of contract since it was, in fact, Weddington who breached the lease agreement. Specifically, Offshore argues that Weddington breached the lease agreement when it failed to obtain a Phase II ESA of the property, and such failure, as outlined in the agreement, constitutes a material breach allowing Offshore to dissolve the lease. Offshore points to Weddington's responses to Request for Admissions, wherein Weddington admitted it did not provide a Phase II ESA to Offshore. Weddington even admitted that its soil sampling was not considered a Phase II ESA. Accordingly, per the express terms of the lease agreement, such a failure is deemed material. Offshore also argues that its dissolution based on this material breach is allowed by law and proper.

---

[1] Request for Admission No. 1: Please admit that no Phase II Environmental Site Assessment was obtained in accordance with provision 15.1 of the attached Lease Agreement.
  Response to Request for Admission No. 1: It is admitted that no Phase II Environmental site assessment was obtained. . .
  Request for Admission No. 2: Please admit that the [soil study] . . . is not a Phase II Environmental Site Assessment.
  Response to Request for Admission No. 2: Admitted.

2

In anticipation of Weddington's arguments, Offshore also argues that there were no modifications to the lease agreement subsequent to execution, and the contract includes no ambiguous terms justifying looking beyond the terms of the agreement. The agreement requires a writing signed by both parties to alter the agreement, and here, there are none. Furthermore, Offshore argues that, pursuant to the agreement, Weddington, as the party in default, is not entitled to attorney's fees.

Finally, Offshore argues that Weddington is not entitled to the remaining rent, since there is no acceleration clause in the agreement. In fact, Offshore removed this clause from the agreement during negotiations. For these reasons, Offshore argues that partial summary judgment should be entered in its favor.

### III. Weddington's Opposition

Weddington's Opposition hinges on discussions outside of the lease agreement. Specifically, Weddington alleges that the soil study along with the 2006 Phase II ESA was orally approved by Offshore. In fact, Offshore advised Weddington that it had what it needed in terms of studies and then directed Weddington to remove some paint from the property, which it did. Accordingly, Weddington argues that Offshore essentially waived its request for a Phase II ESA through both its actions and its silence in the face of the performance by Weddington, the provided studies, and the subsequent work done at the direction of Offshore.

Weddington argues that Offshore's motive for dissolving the agreement was not because of the Phase II ESA, but rather financial in nature. Specifically, Weddington brought forth affidavits asserting that Offshore was struggling to make rental payments and, thus, was looking for a way out of the lease. Weddington contends it would be inequitable to allow Offshore to dissolve the agreement for this reason. Weddington also notes the significant time lapse between Offshore receiving the soil study and its termination of the agreement, approximately 14 months.

Weddington argues that even if its failure to provide a Phase II ESA is deemed a breach, the infringement is not material and does not justify dissolution. In the alternative, Weddington urges the court to use judicial control not to dissolve the lease based on Weddington's good faith, substantial performance, and lack of damage to Offshore.[2]

Based on these facts, Weddington argues that Offshore breached the agreement by terminating it, and as such, summary judgment should not be entered as genuine issues of fact still remain.

---

[2] In support of its argument, Weddington relies on a recent Fifth Circuit decision, which will be discussed in detail below.

## IV. Analysis

### A. <u>Summary Judgment Standard</u>

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when the record establishes "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." When considering a motion for summary judgment, the moving party has the burden of demonstrating that it is entitled to summary judgment and the court must view all of the evidence in the light most favorable to the non-moving party. *Gillis v. Louisiana*, 294 F.3d 755, 758 (5th Cir. 2002); *see, Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### B. <u>Weddington Breached The Lease Agreement By Not Providing A Phase II ESA To Offshore</u>

*a. The terms of the agreement are controlling*

In Louisiana, parties are free to contract under whatever terms they wish, unless contrary to law. La. Civ. Code art. 1971. When the words of such a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. Civ. Code art. 2046. In other words, if a contract is unambiguous on its face, "the contract's meaning and the intent of its parties must be sought within the four corners of the document and cannot be explained or contradicted by extrinsic evidence." *Am. Totalisator Co. v. Fair Grounds Corp.*, 3 F.3d 810, 813 (5th Cir. 1993); La. Civ. Code art. 2046. A contract is deemed ambiguous if the terms of the contract are susceptible to more than one reasonable meaning under the circumstances. *In re Liljeberg Enterprises, Inc.*, 304 F.3d 410, 400 (5th Cir. 2000).

In *Shocklee v. Massachusetts Mutual Life Insurance Company*, the plaintiffs were attempting to assert oral evidence outside of the terms of the insurance contract at issue. 369 F.3d 437 (5th Cir. 2004). The Fifth Circuit held that such evidence was inadmissible because the contract was unambiguous, and thus, the court could only look within the four corners of the contract. *Id.* at 440-41.

Similar to the plaintiffs in *Shocklee*, Weddington is attempting to assert extrinsic evidence here; namely, the oral representation by Offshore approving the 2006 Phase II ESA and soil study as sufficient. However, the lease agreement is unambiguous here, precluding this Court from relying on any such extrinsic evidence. Furthermore, this Court is highly persuaded by the fact that this lease agreement was finalized after thorough negotiations between two sophisticated parties. Therefore, the clear and explicit terms of the written lease agreement control.

4

      *b. Weddington did not comply with the terms of the lease agreement, entitling Offshore to dissolve the agreement*

           i.    <u>Weddington's failure to provide a Phase II ESA was a material breach of the lease agreement</u>

As shown above, the terms of the lease agreement are controlling, requiring Weddington to provide Offshore with a Phase II ESA within 30 days of execution of the lease. Weddington openly concedes it did not comply with this requirement.

In its Opposition, Weddington spends a considerable amount of time discussing cases where courts have found breaches to be immaterial. However, those cases are inapposite here. In the instant case, there is no need to determine whether Weddington's breach was material since both sophisticated parties agreed that such a breach would, in fact, be considered a material breach. No further analysis is required. Therefore, Weddington's failure to provide a Phase II ESA was a material breach of the lease agreement.

           ii.    <u>Offshore did not waive this material breach</u>

In the alternative, Weddington argues that even if its breach was material in nature, Offshore waived its right to assert such a breach by its subsequent modification, particularly, the *verbal agreement* between the two parties. However, the Court need not consider this argument since the lease agreement contained an integration clause and required a written agreement signed by both parties to modify or alter the agreement. None exists here.

           iii.    <u>Offshore's dissolution of the agreement was proper</u>

Louisiana Civil Code Article 2017 allows parties to include a dissolution clause within contracts. Specifically, "parties may expressly agree that the contract shall be dissolved for the failure to perform a particular obligation." Offshore and Weddington agreed to such a provision: "Failure to [provide a Phase II ESA] shall be considered a material breach of this lease and Tenant may, at its sole discretion, avail itself of any right or remedy available to Tenant on account of Lessor's default, either in law or equity." Weddington defaulted by failing to provide a Phase II ESA and Offshore subsequently availed itself of its right to terminate the agreement on January 31, 2011. Offshore's conduct was proper as a matter of law.

    **C.**    <u>**The Fifth Circuit's Use Of Judicial Control In *Walker* Is Distinguishable Here**</u>

Weddington urges this Court to apply the doctrine of judicial control. The doctrine of judicial control is a tool used to block the remedy of lease cancellation under certain circumstances. *See Brewer v. Forest Gravel Co.*, 135 So. 372, 373 (La. 1931). Particularly, it is an equitable doctrine used to "deny cancellation of the lease when the lessee's breach is of minor importance, is caused by no fault of his own, or is based on a good faith mistake of fact." *W. Sizzlin Corp. v. Greenway*, 821 So. 2d 594, 601 (La. Ct. App. 2002). According to the Fifth Circuit, "the best understanding of the judicial control doctrine is that **judicial control depends**

on the 'circumstances.'" *Walker v. Chesapeake Louisiana, L.P.*, 440 Fed.Appx. 254 (5th Cir. 2011) (emphasis added) (*Walker*).

Subsequent to Offshore's instant Motion and Weddington's Opposition, Weddington filed a Supplemental Opposition, briefing the Court on *Walker*, a recent Fifth Circuit Court of Appeals decision that affirmed the application of the doctrine of judicial control. In *Walker*, six lessors of mineral rights brought suit to cancel the oil and gas leases they had executed, alleging the lessee breached key provisions of the lease that were specially negotiated. 440 Fed.Appx. 254 (5th Cir. 2011). The lessors' only prayer was for cancellation of the lease. Although the court found that the lessee did, in fact, breach the provisions of the lease, it nonetheless applied the doctrine of judicial control, finding that the breaches were not so substantial or injurious to the lessors to justify lease cancellation.

Weddington argues that the facts here are very similar to *Walker*. Specifically, the terms of the lease were similarly "specially negotiated" and the breach caused no substantial harm to Offshore. Accordingly, as the court in *Walker*, Weddington argues this Court should also apply the doctrine of judicial control. Conversely, Offshore contends that the facts in *Walker* are inapposite. First, Offshore argues that the lease in *Walker* did not provide that breach of the provision would be considered a material breach, nor did it entitle the lessors to dissolution of the lease or to any remedy in equity or law. Second, Offshore argues that Weddington, as the plaintiff, is not seeking cancellation of the lease as did the Plaintiff in *Walker*. As such, Offshore argues that judicial control should not be applied.

This Court finds that the facts in *Walker* are distinguishable from the facts of the instant action. Particularly, although the terms of the *Walker* lease were specially negotiated, it did not include specific language of a material breach or entitlement of legal and equitable remedies upon breach. These terms were unambiguous and of upmost importance to the parties here. The parties to the suit also differ; in *Walker*, the *lessor* brought suit for breach and prayed for dissolution of the lease, while, here, the *lessee* brought suit after its breach for damages. Most significant to the analysis here is the fact that, while the lessors in *Walker* were seeking to cancel the lease, the lease here has *already been dissolved* by Offshore pursuant to the terms of the contract. As noted above, the doctrine of judicial control is used to "deny cancellation of the lease," but here the lease has already been cancelled. Therefore, the Court finds that "the circumstances" here do not warrant the use of judicial control.

### D. Because It Has Been Found That Weddington Breached The Agreement, It Is Not Entitled To Attorneys Fees

In its Petition, Weddington prayed for attorney's fees due to Offshore's alleged breach of the lease agreement. As noted above, the lease agreement states that the party in default is liable for reasonable attorney's fees. However, as indicated, Offshore is not the party in default, and as such, Weddington cannot recover attorney's fees from Offshore.

### E. Weddington Cannot Recover Unpaid Rent As The Lease Agreement Does Not Include An Acceleration Clause

Under Louisiana law, a lessor has two options available against a lessee in default. A Lessor can either sue to cancel the lease and recover accrued rentals due, or a lessor can sue to enforce the lease and recover both accrued rentals and future accelerated rentals. *Richard v. Broussard*, 495 So.2d 2d 1291, 1293 (La. 1986). However, in order to recover future accelerated rentals, the lease agreement must contain an acceleration clause. *See, id.*

Here, Weddington has prayed for the remaining rental value through the end of the lease, constituting future accelerated rentals. However, there is simply no acceleration clause in the lease agreement between Weddington and Offshore. In fact, the evidence reveals that Offshore successfully negotiated the removal of such a clause. Furthermore, Weddington failed to oppose Offshore's Motion on this issue. Therefore, Weddington is not entitled to recover future accelerated rent.

## V. Conclusion

The Court has reviewed the record and considered Offshore's motion for partial summary judgment, viewing the evidence in the light most favorable to Weddington. The record reveals that the lease agreement, executed and negotiated between two sophisticated parties, required Weddington to perform a Phase II ESA, which it failed to do; due to the express terms of the agreement, this breach was material, entitling Offshore to dissolve the agreement. As a result, there remain no genuine issues of material fact regarding a claim and damages for breach of contract, including attorney's fees and unpaid rent.

For the reasons set forth above, Defendant's Motion for Partial Summary Judgment [Doc. 9] is hereby **GRANTED**.

THUS DONE AND SIGNED at Lafayette, Louisiana on this __24th__ day of January, 2012.

HONORABLE RICHARD T. HAIK, SR.
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA